FILED

08/30/2019

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2019 Session

IN RE CHIVON G.

Appeal from the Juvenile Court for Knox County
No. 56294          Timothy E. Irwin, Judge

_____

No. E2018-02012-COA-R3-PT

_____

This is a termination of parental rights case, focusing on the minor child of the mother/appellant. The child was placed in the legal custody of the petitioner/appellee on November 8, 2016, based upon the trial court's finding that the child was dependent and neglected while in the mother's care. On June 7, 2018, the petitioner filed a petition to terminate the parental rights of the mother. Following a bench trial, the trial court found that statutory grounds existed to terminate the parental rights of the mother upon its finding by clear and convincing evidence that (1) the mother had abandoned the child by willfully failing to provide financial support and (2) the conditions leading to the child's removal from the mother's home persisted. The court further found by clear and convincing evidence that termination of the mother's parental rights was in the child's best interest. The mother has appealed. Having determined that the statutory ground of persistence of the conditions leading to removal was not proven by clear and convincing evidence, we reverse the trial court's finding as to this ground. We affirm the trial court's judgment in all other respects, including the termination of the mother's parental rights to the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Asia G.

Jennifer S. Bjornstad, Knoxville, Tennessee, for the appellee, Shuntia G.

**OPINION**

**I. Factual and Procedural Background**

On June 7, 2018, the plaintiff, Shuntia G. ("Petitioner"), filed a petition in the Knox County Juvenile Court ("trial court") seeking the termination of all parental rights and obligations of Asia G. ("Mother") with respect to her child, ChiVon G. ("the Child"). Petitioner, who was identified as the Child's paternal cousin, alleged that the Child was born out of wedlock to Mother and Anthony H. ("Father") in March 2016 in Knox County.

Petitioner averred that the Child had resided in Petitioner's home since August 26, 2016. She stated that the Child had previously lived with another relative, Brenda D., following the Child's removal from Mother's custody shortly after the Child's birth. According to Petitioner, she was awarded temporary physical custody of the Child in August 2016 by the trial court. She was later granted legal custody of the Child on November 8, 2016, upon the trial court's finding that the Child was dependent and neglected in Mother's care due to Mother's substance abuse and mental health concerns and Father's substance abuse and domestic violence issues. According to Petitioner, Mother and Father were granted only supervised visitation rights with the Child at that time.

Petitioner further asserted that on May 30, 2018, the Knox County Circuit Court, with Judge Gregory McMillan presiding, confirmed the trial court's order denying Mother's request for unsupervised visitation. Petitioner noted, *inter alia*, that Mother had given birth to six children, none of whom was in her custody.

Petitioner asserted multiple grounds in support of her petition for termination of Mother's parental rights. First, she requested that the trial court terminate Mother's parental rights based on persistence of the conditions that originally led the trial court to remove the Child from Mother's home. Second, Petitioner sought termination of Mother's parental rights based on Mother's abandonment of the Child by her willful failure to provide support, specifically alleging that Mother had failed to pay child support for a period longer than four months preceding the filing of the termination petition despite Mother's employment during that period. Finally, Petitioner sought termination of Mother's parental rights based on Mother's alleged abuse of her other children.

Petitioner also asserted that termination of Mother's parental rights was in the Child's best interest. Petitioner stated that she was filing a separate petition seeking termination of Father's parental rights. On June 12, 2018, the trial court entered an order

appointing a guardian *ad litem* to represent the interest of the Child in this matter. The trial court also appointed counsel for Mother based on Mother's affidavit of indigency.

Following a bench trial conducted on November 5, 2018, the trial court entered an order terminating Mother's parental rights on November 14, 2018. In that order, the court considered Mother's relationship with all six of her children. As the trial court noted: "[Mother] has given birth to a total of six children, three of whom [Mother's] parental rights [have] been involuntarily terminated, two are in the custody of non-parents (including [the Child]), and one is in foster care and has been since October 4, 2017." The trial court determined that Mother had failed to pay any meaningful child support to Petitioner despite being consistently employed since at least 2015.

In addition, the trial court found that Mother had been diagnosed with bipolar disorder with psychotic features in February 2018.[1] The court also determined that Mother had sought treatment, including psychotropic medication, to improve her mental health. According to the court's findings, Mother had a "long history" of marijuana use, including during most of her pregnancies.

The trial court further found that the Child was "thriving" in the care of Petitioner. As the court stated: "Petitioner has sufficient income to provide for [the Child], has an appropriate home, has no criminal history, and has no history of substance abuse. [Petitioner] has one biological child that she raised who is currently enrolled in college."

The trial court found that clear and convincing evidence supported termination of Mother's parental rights based on two statutory grounds: (1) Mother's willful failure to pay child support for a period of four consecutive months prior to the filing of the termination petition and (2) persistence of the conditions that initially led to the removal of the Child from Mother's home. The trial court determined, however, that Petitioner had failed to present proof sufficient to terminate Mother's parental rights based on the ground of severe child abuse.

Regarding the best interest of the Child, the trial court explained:

[I]t is in the best interest of the [the Child] for [Mother's] parental rights to be terminated. [Mother] has exhibited some adjustment to her circumstances but the Court does not know if these adjustments will be lasting so that it would be it safe and in [the Child's] best interest to be in her home at some point for visitation. [Mother] has maintained regular supervised contact with [the Child]. [Mother] has as much of a meaningful

---

[1] We note that the clinical psychologist's report from the February 2018 evaluation actually states that Mother's diagnosis "may be Bipolar Disorder with Psychotic Features." (Emphasis added.)

relationship with [the Child] that a person could by visiting a few hours supervised per month for the life of the child. The effect of the change of caregivers would be devastating to [the Child]. There is proof of mental or physical brutality by [Mother] to siblings of [the Child] based upon the neglect of [Mother] which allowed [one of Mother's other children] to burn himself on a heater and based upon [Mother's] subjecting [the Child] and other siblings to domestic violence. There is proof that [Mother's] home itself is appropriate, however, the proof also shows continued [marijuana] use in the home. [Mother] has a long history of mental health issues and substance abuse issues dating back to when her oldest child, [B.G., born in 2001], was a baby, therefore the Court cannot conclude that she could provide care for [the Child] in a safe and stable manner and the Court is not convinced of the stability of [Mother's] mental health status. [Mother] has never paid child support. In addition, the Court must consider that [Mother] has six biological children, none of whom are in her custody. Three of the children have been adopted with [Mother's] rights being terminated involuntarily, one of the children is in foster care, one of the children is in the custody of a relative, and the other is the subject of this case. [Mother] is not permitted unsupervised contact with any of her children. Reviewing each factor set forth by statute to determine what is in the best interest of [the Child], the Court finds that it is in the best interest of [the Child] for [Mother's] parental rights to be terminated so that [the Child] can have permanency and stability.

The trial court, upon terminating Mother's parental rights, granted complete custody, control, and guardianship of the Child to Petitioner. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by finding that Mother had abandoned the Child through Mother's willful failure to pay child support for four consecutive months prior to the filing of the termination petition.

2. Whether the trial court erred by finding that persistence of the conditions leading to removal of the Child persisted such that the Child would be subjected to further abuse or neglect if placed in Mother's care.

3. Whether the trial court erred by determining that termination of Mother's parental rights was in the best interest of the Child.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

> The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).
>
> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or

erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

* * *

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

### IV. Grounds for Termination of Mother's Parental Rights

Tennessee Code Annotated § 36-1-113 (2017) lists the statutory requirements for termination of parental rights, providing in relevant part:

(a)    The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c)    Termination of parental or guardianship rights must be based upon:

(1)     A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)     That termination of the parent's or guardian's rights is in the best interests of the child.

The trial court determined that the evidence clearly and convincingly supported a finding of two statutory grounds to terminate Mother's parental rights: (1) abandonment by willful failure to pay child support for a period of four consecutive months immediately prior to the filing of the termination petition and (2) persistence of the conditions leading to the removal of the Child. We will address each statutory ground in turn.

A.  Abandonment

Tennessee Code Annotated § 36-1-113(g) (2017) provides in relevant part:

Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1)     Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Regarding the definition of abandonment applicable to this ground, Tennessee Code Annotated § 36-1-102(1)(A)(i) (2017) provides:[2]

---

[2] Effective July 1, 2018, Tennessee Code Annotated § 36-1-102(1)(A)(i) has been amended to substitute the following language in place of the former version:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child . . . .

Tenn. Code Ann. § 36-1-102 (Supp. 2018). By reason of the date of the petition's filing, this amendment is not applicable to the instant action.

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child . . . .

In this matter, the trial court found that Mother had willfully failed to pay any meaningful child support to Petitioner despite being consistently employed since at least 2015. At trial, Mother admitted that she was employed at McDonald's for about eighteen months and that the employment ended in approximately 2016. Mother testified that she was subsequently employed at Hardee's from July 2017 to August 2018. By the time of trial, Mother had obtained employment at Bojangles.

When questioned at trial whether she had paid child support to Petitioner, Mother replied that she was never ordered by the court to do so. Mother testified that she had provided "things like clothes and stuff" but that Petitioner had asked her to stop. Petitioner testified that during a prior court hearing concerning the Child, the judge told Mother that she needed to be paying child support. Petitioner stated that Mother had never offered monetary support and that Petitioner had never refused support. According to Petitioner, Mother had brought some clothing for the Child, but it was unusable due to a pervasive smell of smoke that could not be removed by washing. Petitioner also related that Mother had provided some diapers or snacks during visits.

The trial court found that clear and convincing evidence existed demonstrating Mother's willful failure to pay child support during the statutory period. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). The four-month determinative period for purposes of determining abandonment by willful failure to pay support began on February 7, 2018, and concluded on June 6, 2018, the day prior to the filing of the termination petition. *See In re Joseph F.*, 492 S.W.3d 690, 702 (Tenn. Ct. App. 2016) (citing *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085 at *6 (Tenn. Ct. App. Feb. 20, 2014) (explaining that the applicable four-month statutory period preceding filing of the termination petition ends on the day preceding filing)). The proof clearly established that Mother paid no support during this period.

Merely demonstrating that a parent did not support his or her child financially during the statutorily determinative period is not sufficient to prove this ground. *See In re M.J.B.*, 140 S.W.3d 643, 655 (Tenn. Ct. App. 2004). Rather, failure to support is willful when a parent is "aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey*

*S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). It is often necessary for the trial court to consider circumstantial evidence when determining a parent's intent. *See id.*

As this Court has elucidated:

> [T]he element of willfulness is essential and central to the determination of abandonment. Willfulness in the context of termination proceedings does not require the same standard of culpability as is required by the penal code, nor does it require that the parent acted with malice or ill will. Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts. "A parent cannot be said to have abandoned a child when his failure to visit or support is due to circumstances outside his control." *In re Adoption of Angela E.*, 402 S.W.3d [636,] 640 [(Tenn. 2013)] (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810 (holding that the evidence did not support a finding that the parents "intentionally abandoned" their child)).

*In re Alysia S.*, 460 S.W.3d 536, 565-66 (Tenn. Ct. App. 2014), *perm. app. denied* (Tenn. Mar. 16, 2015) (other internal citations omitted).

In the case at bar, it is undisputed that Mother paid no monetary support to Petitioner during the statutorily determinative period. Moreover, Mother admitted that she was gainfully employed at Hardee's during that period. Mother further testified that she had her own apartment, which she had maintained for two years at the time of trial. Mother presented no testimony or other evidence that she was unable to pay child support; she simply stated that she had not been ordered to do so.[3]

It is well settled in Tennessee that every parent is presumed to have knowledge of a parent's duty to support his or her minor children regardless of whether a court order to that effect is in place. *See* Tenn. Code Ann. § 36-1-102(1)(H) (2017) ("Every parent who

---

[3] According to Mother's testimony, Mother provided some items of clothing and diapers for the Child, but it is unclear whether these items were provided during the statutorily determinative period. Assuming, *arguendo*, that these items were provided during the determinative four-month period, we determine that these items constituted no more than token support. *See* Tenn. Code Ann. § 36-1-102 (1)(B) (2017) (defining "token support" to mean that "the support, under the circumstances of the individual case, is insignificant given the parent's means"); *see, e.g., In re Hailey S.*, No. M2015-00842-COA-R3-PT, 2016 WL 3209444, at *11 (Tenn. Ct. App. May 31, 2016), *perm. app. denied* (Tenn. Mar. 1, 2017) (determining that small gifts provided to the child by the father constituted merely token support when the father was "admittedly capable of working and actually employed at various times").

is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children[.]"); *Kirkpatrick v. O'Neal*, 197 S.W.3d 674, 680 (Tenn. 2006) (holding "that a parent is liable for the support of his or her child throughout minority, with or without the existence of a court order, and that parents are liable for support retroactively from the date custody is granted to another person."). Mother was clearly aware of this duty because she admitted that she had been involved in child support proceedings concerning certain of the Child's siblings. Mother's failure to pay support due to the lack of a court order directing her to do so, therefore, can only be characterized as "intentional or voluntary" as opposed to "accidental or inadvertent." *See In re Alysia S.*, 460 S.W.3d at 566. We find Mother's argument that her failure to pay child support was not willful due to the absence of a court order concerning support to be unavailing. Accordingly, we conclude that the evidence preponderates in favor of the trial court's finding, by clear and convincing evidence, that the statutory ground for termination of willful failure to pay child support was proven by Petitioner.

## B. Persistence of Conditions

The trial court also determined that the ground of persistence of the conditions leading to the Child's removal from Mother's home had been proven by clear and convincing evidence. Regarding this statutory ground, Tennessee Code Annotated § 36-1-113(g)(3) provides:[4]

---

[4] Effective July 1, 2018, subsequent to the commencement of the instant action, the General Assembly has amended Tennessee Code Annotated § 36-1-113(g)(3), replacing the former language in its entirety with the following:

(3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

(3)     The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

    (A)     The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;

    (B)     There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

    (C)     The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home . . . .

A prior court order adjudicating the child to be dependent, neglected, or abused is an essential requirement of a court's termination of parental rights upon the ground of persistence of conditions. *See In re Audrey S.*, 182 S.W.3d at 874. As this Court explained, the statutory ground of persistence of conditions "applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *Id.*

In the instant action, the trial court adjudicated the Child to be dependent and neglected on November 8, 2016. Therefore, there is no dispute that the Child had been removed from Mother's custody and home for more than six months prior to the initiation of termination proceedings. *See* Tenn. Code Ann. § 36-1-113(g)(3). The trial court removed the Child from Mother's home due to Mother's substance abuse and mental health issues. At trial, Mother admitted that she had smoked marijuana for many years and had done so during the majority of her pregnancies. Mother testified, however, that she had not smoked marijuana for approximately one year at the time of trial. Despite her lengthy history with the drug, Mother insisted that she was not addicted to marijuana.

---

    (B)     The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard.

Tenn. Code Ann. § 36-1-113 (Supp. 2018). By reason of the date of the petition's filing, this amendment is not applicable to the instant action.

There was no proof that Mother had ever completed any type of drug rehabilitation program.

Concerning her mental health issues, Mother acknowledged that she suffered from depression and mood swings. Mother stated that she had been taking medication on a regular basis and also was attending consistent therapy sessions with a practitioner employed by Omni Health. In addition, Mother testified that she had been able to live on her own and maintain a residence and employment.

With regard to the statutory ground of persistence of conditions, the trial court specifically found:

> [Mother] has a long history of mental health issues that interfere with her ability to parent. [Mother] appears to be following mental health recommendations of therapy and medication management, however, she still needs to complete a neurological evaluation to determine whether she has permanent neurological damage from an accident years ago. This Court is not convinced of the stability of [Mother's] current mental health status.

Concerning the need for a neurological evaluation, a Department of Children's Services ("DCS") family service worker, Ms. Dishman, testified that she had been working with Mother concerning her youngest child, M.R.G., and that Mother had been asked to complete a neurological examination as part of her permanency plan related to M.R.G. Ms. Dishman indicated that Mother had completed all of the requirements of her permanency plan concerning M.R.G. with the exception of the neurological evaluation. Ms. Dishman stated that such examination had been scheduled at a previous date but had to be rescheduled due to a change in physicians. According to Ms. Dishman, the purpose of the neurological examination was to rule out a possible past head injury for Mother. Despite Mother's history with DCS, Ms. Dishman testified that DCS was pursuing unsupervised visitation for Mother and M.R.G. Therefore, notwithstanding the trial court's findings in this matter, we do not consider the lack of a neurological evaluation to be a controlling factor in the analysis of the statutory ground of persistence of conditions.

With regard to the conditions leading to removal of the Child from Mother's home, listed as Mother's "substance abuse and mental health issues" in the dependency and neglect order, Mother testified during trial that she was following the recommendations of her mental health evaluation by regularly taking her prescribed medications and engaging in consistent therapy. Mother's testimony in this regard was unrefuted. We further note that concerning substance abuse, Mother testified that she had not used illicit drugs for approximately one year. Her testimony on this point was also unrefuted. In its November 2018 termination order, the trial court noted that there was

"continued" marijuana use in Mother's home, finding that "[Mother's] minor child, [B.G.], who has been adopted, testified in Fourth Circuit Court [in] May 2018, that she smokes marijuana just outside of [Mother's] apartment when she visits [Mother], and [Mother] takes no action or steps to stop her."

The appellate record before us does not include a transcript containing B.G.'s testimony before the Fourth Circuit Court in May 2018, nor does the Fourth Circuit Court's resultant order, which does appear in the record, reference any such testimony. Petitioner testified to the following information during trial:

| Petitioner: | [B.G.] testified that she smokes weed at your house, you know about it. And you actually testified that, yeah, you know about it but there's nothing you can do. |
| --- | --- |
| Petitioner's Attorney: | Is that what she testified to in 4th Circuit Court? |
| Petitioner: | Yes. |
| Petitioner's Attorney: | What? |
| Petitioner: | [B.G.] did state that she did smoke marijuana at [Mother's] house and [Mother] was aware of it. |

Mother denied this characterization of B.G.'s testimony, explaining that B.G. acknowledged having smoked both cigars and marijuana in the past and then testified that at Mother's house, "she would go outside and smoke." The trial court made no explicit findings concerning Mother's or Petitioner's credibility as witnesses.

Based on our thorough review of the record, we conclude that the evidence presented regarding the statutory ground of persistence of the conditions leading to the Child's removal from Mother's home does not rise to the level of clear and convincing. Although we understand and appreciate the trial court's concerns in relation to Mother's lengthy history of mental health and substance abuse issues, there was simply insufficient evidence demonstrating that these conditions persisted at the time of trial. *See, e.g., In re Jimmy B.*, No. E2015-02070-COA-R3-PT, 2016 WL 2859180, at \*7 (Tenn. Ct. App. May 11, 2016). Mother's testimony that she no longer used drugs was unrefuted by any other testimony or by evidence of drug testing. Likewise, Mother's testimony that she was in compliance with her mental health treatment was also unrefuted. We therefore conclude that the trial court erred in determining that clear and convincing evidence existed to terminate Mother's parental rights based on this statutory ground. However, because the ground of abandonment by willful failure to support was clearly established, we must

- 13 -

now proceed to the analysis of best interest. *See In re Audrey S.*, 182 S.W.3d at 862 ("Clear and convincing evidence of any one of the . . . statutory grounds for termination of parental rights listed in Tennessee Code Annotated section 36-1-113(g) is sufficient to support an order terminating parental rights where termination is in the best interests of the child.").

## V. Best Interest of the Child

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 ("The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." (quoting *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010))). Tennessee Code Annotated § 36-1-113(i) (2017) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

- 14 -

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

As our Supreme Court has explained regarding the best interest analysis:

"The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." In re Angela E., 303 S.W.3d at 254.

When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d at 555 (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they

amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

In the case at bar, the trial court carefully considered the above-listed statutory factors when making its determination concerning whether termination of Mother's parental rights was in the best interest of the Child. Following our thorough review of the record, we conclude that clear and convincing evidence supports the trial court's finding in this regard.

Concerning the first and second statutory factors, the evidence did not demonstrate that Mother had made a sufficient adjustment of her circumstances or conduct as to make it safe and in the Child's best interest to reside with her. As the trial court noted in its

- 16 -

termination order, Mother had exhibited some adjustments, but the adjustments were of such recent nature that it would be difficult to predict whether they would be long lasting. In accordance with the third factor, Mother had maintained regular supervised visits with the Child.

Regarding factor four, the evidence did not establish whether Mother had a meaningful relationship with the Child. As the trial court noted, "[Mother] has as much of a meaningful relationship with [the Child] that a person could by visiting a few hours supervised per month for the life of [the Child]." Concerning the fifth factor, the trial court found that a change of caretakers and physical environment would be devastating for the Child, and we agree. The evidence demonstrated that the Child was bonded to Petitioner and was thriving in her care. Petitioner exhibited the willingness and ability to provide for all of the Child's needs, including her medical needs. Mother did not demonstrate such an ability.

In accordance with factors six and seven, although there was little proof concerning the physical environment of Mother's current home, evidence was presented that Mother had been neglectful of the Child's siblings in the past and had subjected them to domestic violence in the home, as the trial court found. Factor eight, concerning Mother's mental state, would also militate against placement of the Child with Mother due to concerns regarding her history of mental health issues and whether her ongoing treatment would prove to be effective so as to allow her to safely parent the Child. Regarding factor nine, Mother had paid no child support for the Child.

We conclude that the evidence presented at trial preponderates in favor of the trial court's determination, by clear and convincing evidence, that termination of Mother's parental rights was in the best interest of the Child.

VI. Conclusion

For the foregoing reasons, we reverse the trial court's finding that clear and convincing evidence existed to terminate Mother's parental rights based on the statutory ground of persistence of the conditions leading to the Child's removal from Mother's home. Having also determined, however, that clear and convincing evidence was presented of Mother's abandonment of the Child by willful failure to support and that termination of Mother's parental rights was in the Child's best interest, we affirm the trial court's judgment in all other respects, including the termination of Mother's parental rights to the Child. This case is remanded to the trial court for enforcement of the trial court's judgment and collection of costs assessed below. Costs on appeal are taxed to the appellant, Asia G.

_____
THOMAS R. FRIERSON, II, JUDGE